Case 7:20-cv-00137 Document 13 Filed on 09/22/20 in TXSD Page 1 of 8

United States District Court
Southern District of Texas
**ENTERED**
September 22, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| EDINBURG UNITED POLICE OFFICERS ASSOCIATION, § § § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 7:20-cv-00137 |
| CITY OF EDINBURG, TEXAS, § § § | |
| Defendant. § | |

## OPINION AND ORDER

The Court now considers "Plaintiff, Edinburg United Police Officers Association's Opposed Motion to Compel Arbitration"[1] and Defendant's response.[2] After considering the motion, record, and relevant authorities, the Court **GRANTS** Plaintiff's motion and orders arbitration of certain claims.

### I. BACKGROUND AND PROCEDURAL HISTORY

This is a labor dispute. In January 2018, City of Edinburg, Texas, police officers represented by Plaintiff Edinburg United Police Officers Association executed a "Meet and Confer Agreement" pursuant to Texas Local Government Code Chapter 142,[3] controlling the "wages, salaries, rates of pay, hours of work, and other terms and conditions" for employees of the Edinburg Police Department.[4] When a new chief of police, Chief Cesar Torres, began to pursue changes in the police department in 2019, the parties' relationship soured.[5] Plaintiff alleges that Chief Torres made personnel decisions, such as suspending certain police officers or

---

[1] Dkt. No. 10.
[2] Dkt. No. 12.
[3] *See* TEX. LOC. GOV'T CODE ANN. §§ 142.051–.068 (West 2020).
[4] Dkt. No. 1-1 at 2, ¶ 6.
[5] *See id.* at 3–5, ¶¶ 11–20.

assigning them to undesirable shifts, based on their opposition to Chief Torres's personnel decisions or because of the police officers' membership with Plaintiff Association, which voted against Chief Torres's move to reopen the Meet and Confer Agreement to make certain lateral hires.[6] For example, in July and August 2019, Chief Torres reassigned Plaintiff Association Secretary Eric Salazar and Association Trustee Arnoldo Ysquierdo, both officers of the police department, from their favorable position in the Criminal Investigations Division (with better pay,[7] regular shifts, office space, and no need to wear uniforms) to regular patrol, "thereby causing them to lose the additional pay and favorable working conditions provided by Art. 19(5) of the Agreement."[8]

Within days after Chief Torres's personnel reassignment, Eric Salazar and Arnoldo Ysquierdo filed grievances pursuant to the Meet and Confer Agreement.[9] Both claim in their respective grievances that their reassignment "violated Article 21 of the Agreement and was done for the illegal purpose of attempting to chill [their] right to freedom of association, guaranteed by the First Amendment to the Constitution of the United States."[10] Plaintiff alleges that Chief Torres failed to respond to the grievances as required by the Meet and Confer Agreement.[11] "After satisfying with [sic] the mediation provision of Article 26," Plaintiff Association tendered a demand for arbitration, but Defendant City allegedly refuses to arbitrate the grievances.[12]

---

[6] *Id.*
[7] *See* TEX. LOC. GOV'T CODE ANN. § 143.042(b) (West 2020) ("The governing body of a municipality may authorize assignment pay for fire fighters and police officers who perform specialized functions in their respective departments.").
[8] Dkt. No. 1-1 at 3–5, ¶¶ 11–20.
[9] *Id.* at 6, ¶¶ 21–23.
[10] *Id.*
[11] *Id.* ¶ 25.
[12] *Id.* ¶¶ 26–27.

On April 9, 2020, Plaintiff filed a complaint in the 93rd Judicial District Court of Hidalgo County, Texas, bringing claims against Defendant City for declaratory judgment and breach of contract and seeking a permanent injunction compelling Defendant City to arbitrate Plaintiff's claims pursuant to the Meet and Confer Agreement.[13] Defendant was served on May 4, 2020, and removed on May 28th.[14] On June 25th, Plaintiff moved to remand,[15] but this Court held that it has jurisdiction over this case because Plaintiff's complaint raises a federal question in the form of First Amendment claims.[16] Nevertheless, Plaintiff now seeks to compel Defendant to arbitrate "the portions of the grievances filed by Eric Salazar and Arnoldo Ysquierdo that claim that their reassignments from the Criminal Investigations Division violated their rights under Article 21 of the Meet & Confer Agreement."[17] Defendant City has responded[18] and the motion is ripe for consideration.

## II. Discussion

### a. Legal Standard

> Enforcement of an arbitration agreement involves two analytical steps: (1) whether there is a valid agreement to arbitrate; and (2) whether the dispute falls within the scope of that agreement. . . . Determining whether there is a valid arbitration agreement is a question of state contract law and is for the court. The parties agree that Texas law applies. Texas has no presumption in favor of arbitration when determining whether a valid arbitration agreement exists. Instead, the party moving to compel arbitration must show that the agreement meets all of the requisite contract elements. In addition, because the validity of the agreement is a matter of contract, at this stage, the strong federal policy favoring arbitration does not apply.[19]

---

[13] *Id.* at 7–10, ¶¶ 29–42.
[14] Dkt. No. 1 at 1, ¶¶ 3–4.
[15] Dkt. No. 4.
[16] Dkt. No. 9.
[17] Dkt. No. 10 at 3, ¶ 8.
[18] Dkt. No. 12.
[19] *Huckaba v. Ref-Chem, L.P.*, 892 F.3d 686, 688–89 (5th Cir. 2018) (citations omitted); *see Forged Components, Inc. v. Guzman*, 409 S.W.3d 91, 100 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (similar).

Even if the parties agreed to arbitrate and the issue is within that agreement, the Court also assesses "whether . . . statute or policy renders the claims nonarbitrable."[20] However, Plaintiff asserts "[t]here is no statute or policy rendering the claims nonarbitrable"[21] and Defendant does not oppose this assertion.[22]

### b. Analysis

Neither party disputes that they are bound by the Meet and Confer Agreement and that it is enforceable.[23] The dispute centers on whether the dispute is within the scope of the Agreement. Plaintiff argues that Chief Torres's reassignment of officers Salazar and Ysquierdo violated "their rights under Article 21 of the Meet & Confer Agreement between the City and Edinburg United."[24] Defendants respond that Articles 6 and 26 put Plaintiff's grievances outside the scope of arbitration.

In the Meet and Confer Agreement, Article 21 provides in pertinent part: "The City agrees not to discriminate against any employee for their activity in behalf of, or membership in, the Association."[25] Plaintiff specifically alleges that "Chief Torres violated Art. 21 of the Agreement by removing Eric Salazar and Arnoldo Ysquierdo from their assignment to CID, based on activity on behalf of, or membership in, Edinburg United."[26] Plaintiff's allegation is supported by other allegations that Chief Torres "explicitly stat[ed] that he did not care that the changes [he would be making to the police department] would result in lawsuits because he was not going to be around long enough to see them reach their conclusions,"[27] that Chief Torres reassigned Association treasurer Eric Salazar to a graveyard patrol shift from his favorable

---

[20] *Dealer Computer Servs. v. Old Colony Motors, Inc.*, 588 F.3d 884, 886 (5th Cir. 2009).
[21] Dkt. No. 10 at 4, ¶ 16.
[22] *See* Dkt. No. 12.
[23] Dkt. No. 4 at 2, ¶ 6; Dkt. No. 12 at 1–2, ¶ 4.
[24] Dkt. No. 10 at 3, ¶ 7.
[25] Dkt. No. 4-1 at 15, art. 21.
[26] Dkt. No. 1-1 at 7, ¶ 29.
[27] *Id.* at 3–4, ¶ 12.

position with the Criminal Investigation Division (causing him to lose the better pay) only two days after officer Salazar's election to a board position of the Association,[28] and that Chief Torres previously indefinitely suspended the Association president and treasurer without pay and subsequently reinstated them "without any discipline being imposed for the conduct made the basis of the administrative suspension and the indefinite suspension."[29] Plaintiff seeks to compel arbitration of "*only* the portions of the grievances filed by Eric Salazar and Arnoldo Ysquierdo that claim that their reassignments from the Criminal Investigations Division violated their rights under Article 21 of the Meet & Confer Agreement."[30] Article 26 provides for a dispute procedure including arbitration.[31]

However, the Meet and Confer Agreement has limitations. Article 6 is entitled "Management Rights" and provides, "[t]he parties understand that the management and direction of the working force is vested exclusively in the City as the employer. Subject to prevailing statutes and ordinances, the City retains the right to hire, demote, suspend, discharge, retire, lay off, promote, assign, or transfer employees to any job or any work, anytime or anywhere; . . . to determine the number and size of the work shifts; . . . to determine the number of and assign employees to any work or any job," et cetera.[32] Article 26 provides the following, inter alia:

- A. A "contract dispute" or "dispute" is defined as a claim that an express provision of this Agreement has been violated, excluding disciplinary matters . . . . Only disputes involving the interpretation, application or alleged violation of a specific clause of this agreement may be submitted to the contract dispute procedure [including arbitration].

- E. Notwithstanding anything in this Agreement to the contrary, the following matters are not subject to the dispute procedure of this Agreement:

---

[28] *Id.* at 7, ¶¶ 19–20; *see* Dkt. No. 7-3 at 1–3.
[29] Dkt. No. 1-1 at 5, ¶¶ 17–18.
[30] Dkt. No. 10 at 3, ¶ 8.
[31] *See* Dkt. No. 4-1 at 17–19, art. 26.
[32] Dkt. No. 4-1 at 6, art. 6, *quoted in* Dkt. No. 12 at 4, ¶ 13.

> 3. Any matter that is not covered by this Agreement, any management rights, unless such rights are limited by a specific provision of this agreement.[33]

Defendant points to these provisions to argue that Chief Torres's reassignment of police officers Eric Salazar and Arnoldo Ysquierdo is a management right excepted from the agreement to arbitrate.[34] Defendant argues that this is "a gateway dispute about whether the parties are bound by a given arbitration clause [that] raises a question of arbitrability for a court to decide."[35]

The Court agrees with Plaintiff that officer Salazar's and Ysquierdo's unresolved grievances are required to be submitted to arbitration pursuant to Article 26 of the Meet and Confer Agreement and that Plaintiff is entitled to an order compelling Defendant to arbitrate the grievances.[36] Although Defendant is correct that Articles 6 and 26 grant capacious management rights that are not subject to arbitration, those management rights are contractually limited by any "specific" or "express provision" in the Meet and Confer Agreement.[37] Defendant may not "cherry-pic[k] certain terms of the M&C Agreement and ignor[e] other pertinent relevant language" in the Agreement.[38] Because Defendant City agreed in Article 21 "not to discriminate against any employee for their activity in behalf of, or membership in, the Association,"[39] and Plaintiff alleges Defendant violated this specific provision,[40] and Plaintiff alleges its compliance with the Meet and Confer Agreement's procedures and conditions precedent to submit the dispute to arbitration,[41] the Court holds that Plaintiff is entitled to compel Defendant to comply with Article 26 and its arbitration provision.

---

[33] Dkt. No. 4-1 at 17–18, art. 26.
[34] Dkt. No. 12 at 4–5, ¶¶ 13–15.
[35] *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002), *cited in* Dkt. No. 12 at 5, ¶¶ 15–16.
[36] *See* Dkt. No. 1-1 at 8, ¶¶ 36–37.
[37] Dkt. No. 4-1 at 17–18, art. 26.
[38] Dkt. No. 12 at 2, ¶ 5.
[39] Dkt. No. 4-1 at 15, art. 21.
[40] *See supra* notes 26–29.
[41] *Compare* Dkt. No. 1-1 at 6, ¶¶ 22–27, *with* Dkt. No. 4-1 at 17–18, art. 26(C).

However, Defendant argues that the Court must limit the scope of exactly what claims are referred to arbitration[42] and these arguments are well-taken. When an arbitration agreement explicitly commits statutory claims to arbitration, the arbitration agreement controls and statutory claims must be submitted to arbitration, whereas when an arbitration agreement commits claims or disputes to arbitration that are *similar* to or even substantially duplicative of the rights secured under a statute or constitution, the arbitration agreement does not eliminate the plaintiff's right to seek judicial relief for violations of those statutory or constitutional rights, even if parallel with an arbitration claim.[43] The Court agrees with Defendant that "there [is] nothing in the M&C Agreement that should be interpreted as having subsumed or compromised the statutory rights of individual employees."[44] Article 21 states in full:

> The City agrees not to discriminate against any employee for their activity in behalf of, or membership in, the Association. Nothing in this Agreement shall interfere with any police officer's right to pursue allegations of discrimination based on race, creed, color, national origin, religion, age, sex/gender, sexual harassment or disability with the Texas Commission on Human Rights or the Equal Employment Opportunity Commission.[45]

Nothing in Article 21 commits *any* statutory or constitutional claim or dispute to an arbitral forum or precludes judicial relief of statutory or constitutional claims for individuals subject to the Meet and Confer Agreement.[46] Accordingly, "there is no obstacle created by the M&C

---

[42] Dkt. No. 12 at 7, ¶ 26.
[43] *See Mathews v. Denver Newspaper Agency LLP*, 649 F.3d 1199, 1205–06 (10th Cir. 2011) (discussing *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247 (2009) & *Alexander v. Gardner-Denver Co.*, 415 U.S. 36 (1974)); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33–34 (1991).
[44] Dkt. No. 12 at 8, ¶ 31.
[45] Dkt. No. 4-1 at 15, art. 21; *accord* TEX. LOC. GOV'T CODE ANN. § 142.061(b) (West 2020) ("A meet and confer agreement ratified under this subchapter may not interfere with the right of a member of a bargaining unit to pursue allegations of discrimination based on race, creed, color, national origin, religion, age, sex, or disability with the Texas Workforce Commission civil rights division or the federal Equal Employment Opportunity Commission or to pursue affirmative action litigation.").
[46] *See Pyett*, 556 U.S. at 262–63 (2009) (collecting cases) (holding that an arbitration agreement that does not require submission of statutory claims to arbitration cannot be invoked to compel submission of claims to arbitration beyond the agreement parameters).

Agreement for an individual employee to bring a Section 1983 First Amendment claim"[47] and Plaintiff lacks the contractual authority to require the submission of its Texas declaratory judgment claims,[48] or First Amendment claims[49] to arbitration. Plaintiff's claim for breach of contract, which is premised on Defendant's alleged violations of Article 21,[50] is subject to arbitration.

### III. HOLDING

Accordingly, the Court **GRANTS** Plaintiff's motion to compel arbitration.[51] The Court **ORDERS** Defendant to comply with Article 26 of the Meet and Confer Agreement[52] including its arbitration provisions, and further **ORDERS** that the parties submit to arbitration in accordance with Article 26 "the portions of the grievances filed by Eric Salazar and Arnoldo Ysquierdo that claim that their reassignments from the Criminal Investigations Division violated their rights under Article 21 of the Meet & Confer Agreement" as well as the relief sought therein.[53] Parties are further **ORDERED** to submit a renewed joint discovery/case management plan or a joint request to abate this case until the arbitration proceeding is resolved no later than **October 2, 2020**.

IT IS SO ORDERED.

DONE at McAllen, Texas, this 22nd day of September 2020.

_____
Micaela Alvarez
United States District Judge

---

[47] Dkt. No. 12 at 9, ¶ 34.
[48] *See* Dkt. No. 1-1 at 7, ¶¶ 29–30 (citing TEX. CIV. PRAC. & REM. CODE ANN. § 37.011).
[49] *See id.* ¶¶ 21, 23, 39–40.
[50] Dkt. No. 1-1 at 8, ¶ 34.
[51] Dkt. No. 10.
[52] *See* Dkt. No. 4-1 at 17–19, art. 26.
[53] Dkt. No. 10 at 4–5, ¶ 17.